BALDWIN *v.* HUDSON *et al.*

1. Where an entry, made by a coroner upon an execution which is not directed to him, is relied upon to save from dormancy the judgment from which such execution was issued, it must appear that before the entry was made an affidavit had been made in accordance with section 496 of the Political Code.

2. Where upon the trial of a claim case arising under a levy made by virtue of such an execution a motion is made to dismiss the levy upon the ground that the judgment is dormant, and no such affidavit appears in the record, and where upon a motion to establish such an affidavit as a lost paper the evidence introduced before the trial judge is conflicting, but greatly preponderates in favor of the proposition that no such affidavit was ever made, the discretion of the trial judge in refusing to establish such affidavit as a lost paper will not be controlled. It results that the levy was properly dismissed.

Argued October 20, — Decided November 27, 1897.

Levy and claim. Before Judge Littlejohn. Schley superior court. April term, 1897.

A claim to land levied on under an execution from a judgment rendered October 25, 1876, in Schley superior court, in favor of E. S. Baldwin against T. B. Myers, was interposed by Ada Hudson and Nannie Cato. Upon the execution was an entry of nulla bona, dated June 4, 1883, and signed "L. A. Giles, coroner, Schley county." This was followed by an entry dated October 25, 1889. The date of the levy was July 30,

1894. The claimants moved to dismiss the levy, upon the ground that the execution appeared upon its face to be dormant, in that the entry made by Giles, coroner, was illegal and unauthorized, the fi. fa. not being directed to the coroner, and it not appearing that Giles, as coroner, was authorized to make the entry. The plaintiff in execution offered to submit proof that an affidavit as required by the Political Code, § 496, was made before the clerk of the court placed the process in the hands of the coroner for execution. He testified: On June 4, 1883, he made, before J. N. Cheney, clerk, such an affidavit as he now proposes to establish. E. M. Butt, his attorney, wrote out the affidavit in Cheney's office and gave it to witness, and also wrote out nulla bona of that date on the fi. fa., and witness gave the fi. fa. to Giles, the coroner. The affidavit was signed by J. N. Cheney, clerk, and Cheney filed it in the clerk's office before the entry of nulla bona was made by Giles. The entry of nulla bona was signed then and there by the coroner. He could not now say that the affidavit filed was like the one now proposed to be established. The affidavit was attached to the fi. fa. at the time the coroner signed the nulla bona. Witness handed the papers back to Cheney, clerk, and has not seen the affidavit since that time. He is certain he has never made but one affidavit of any kind relative to this fi. fa. — Subsequently, after consultation with his attorneys over the written instrument, the witness testified that he had made a mistake, for he had made an affidavit to have the homestead levied upon, besides the affidavit now proposed to be established. — J. M. Murray, clerk of the superior court, testified: He was first elected clerk of the court in 1891, and the fi. fa. and entries thereon, and the claim papers, were entered on complete record by him. The original papers are not recorded on complete record. He has no recollection of seeing an affidavit like the one now proposed to be established. Such an affidavit was not with the papers at the time he put the same on complete record, nor at the time he made a copy of the papers two or three years ago for Mr. Hudson, claimants' attorney. — L. A. Giles testified: Defendant in fi. fa. was sheriff of Schley county at the date of the entry of nulla bona which wit-

ness made on the execution as coroner. Witness does not remember whether such an affidavit as the one sought to be established was shown to him before he made the entry. If one was attached to the fi. fa., he has no recollection of it. The fi. fa. was handed him by the plaintiff. He has no recollection connecting E. M. Butt with the transaction. He thinks the entry was written out when handed to him, and he simply signed it at the request of the plaintiff and gave it back to him. The clerk of the court did not give him the fi. fa., nor such an affidavit as the one proposed to be established. The transaction took place between him and the plaintiff. During the time he was coroner and T. B. Myers sheriff, only two fi. fas. were placed in his hands for execution: one was this fi. fa., and the other a fi. fa. in favor of Blanche & McGarrah, transferred to Harrold, Johnson & Company. An affidavit such as the one sought to be established was made in connection with the Blanche & McGarrah fi. fa. He recollects clearly that affidavit and making the entry, and he recollects making the entry on the Baldwin fi. fa., "but no affidavit being attached or connected with it." The affidavit made on the Blanche & McGarrah fi. fa. was made and handed to him by Mr. Johnson. He has no recollection of but one affidavit being made in the two cases. He had a conversation with Mr. Hudson, in the presence of J. F. Woods, former sheriff, and James Warner, and stated to Mr. Hudson that no such affidavit was ever made with the Baldwin fi. fa. against Myers. He never heard of one being with that fi. fa.—J. N. Cheney testified: He was clerk of the superior court when the suit of Baldwin against Myers was brought in 1876 and 1877. T. B. Myers was not sheriff of Schley county at that time, but was sheriff in 1883, at the date of the entry of nulla bona by Giles, coroner. Witness was succeeded by J. M. Murray, the present clerk. He has no recollection of such an affidavit being made before him by E. S. Baldwin as the one proposed to be established. He has no recollection of such an affidavit being made by any one during his service as clerk. If such had been made it would have attracted his attention, and he thinks he would have remembered it. He remembers E. M. Butt, Giles, coroner, and E. S.

Baldwin being in his office at or about the time the nulla bona was returned by Giles as coroner, and Butt did some writing there, and the coroner signed his name there. He could not remember what the writing was that Butt did, except that it was to keep alive the fi. fa., as the defendant in fi. fa. was then sheriff.—William Allen testified: He is now sheriff of the county. He succeeded J. F. Woods as sheriff. He has had this fi. fa. in his possession as sheriff, and has made some entries on it to keep it alive, at the request of plaintiff. It has been in his office for several years. He obtained it from the plaintiff. At the time he got it there was no such affidavit attached to or with it as the one now proposed to be established. He never saw nor heard of such an affidavit until now. He was sheriff a short while, three or four months, prior to the time he succeeded Woods; that was in 1889. Woods was the sheriff in 1892. He was appointed to fill out the unexpired term of T. B. Myers. The fi. fa. was not in the office when he filled out the unexpired term.

J. B. Hudson testified for the claimants: He had been familiar with this fi. fa. for several years prior to the levy now in controversy. He represented the defense in the proceeding by the plaintiff to subject the homestead, and at that time investigated the matter to ascertain if such an affidavit as is now proposed to be established had never been made prior to the entry of Giles, coroner. He saw Giles, who informed him that no such affidavit had been made, to his knowledge. He made also a search in the clerk's and sheriff's offices, and found no such affidavit. He had been looking after the defense in this claim case since the filing of the claim, and had made a copy of the fi. fa. and entries thereon, and the papers attached thereto, so as to be able to establish a correct copy of the fi. fa. should it be lost. By consent of the clerk witness kept possession of the fi. fa. for about a year, for the purpose of preserving it as it was. Until this trial witness had never heard of any claim by the plaintiff or his attorney that such an affidavit had been made in this case. When he first inspected the fi. fa. there was no such affidavit attached to or with it, and nothing that suggested that such an affidavit had ever been made, and

he had never seen any such affidavit. The fi. fa. had not been altered or changed, or any paper detached or taken from it, since it was first examined by him. The fi. fa. and the entries thereon are exactly as they were when he first saw it, except the levy now in controversy.—The plaintiff moved to rule out the testimony of Hudson as irrelevant and illegal, and as referring to matters transpiring since the date of the entry in controversy. The court overruled the motion.

J. F. Woods testified for claimants: He succeeded Myers as sheriff of Schley county. Allen served a few months when Myers was elected to the legislature. Witness made a levy on the fi. fa., and had it in his possession. No such affidavit as the one proposed to be established was ever attached to the fi. fa. or with it when the same was in his possession, He never saw nor heard of such an affidavit until this trial, except at a conversation sometime past between L. A. Giles and J. B. Hudson, in the presence of Jeff Myers and Jim Warnock, when he heard Giles tell Hudson that no such affidavit was ever shown him or made known to him in this case, but that such an affidavit had been made "in the Blanche & McGarrah fi. fa. against Myers, and that he made an entry on that fi. fa."— Plaintiff moved to exclude this testimony, as negative, irrelevant and illegal. The motion was overruled.

The court announced orally, that the evidence was insufficient to establish the affirmative of the issue presented, and that the levy should be dismissed. Before any written judgment was signed, plaintiff presented a petition alleging that an affidavit thereto annexed, and made to conform to the Political Code, § 496, was a true copy of "the one that was lost, made by E. S. Baldwin, and filed in the clerk's office of the superior court of Schley county," and praying to establish the same in lieu of the original so lost. Upon the back of the affidavit so attached was written an affidavit by plaintiff, that "the within is a true copy of the affidavit made by affiant and the same has been lost, and that the same was filed by affiant in clerk's office of Schley superior court prior to the nulla bona by L. A. Giles, coroner, and that said affidavit was attached to said fi. fa. at the time of the nulla bona by said L. A. Giles."

Judgment dismissing the levy was rendered. The plaintiff excepted to each of the rulings stated.

*W. H. & C. R. McCrory* and *J. H. Lumpkin,* for plaintiff.
*E. A. Hawkins, Allen Fort* and *J. B. Hudson,* contra.

SIMMONS, C. J. The dormancy of the judgment from which the execution was issued depended upon the entry made by the coroner. Section 496 of the Political Code provides that "When a sheriff is disqualified, and it does not appear upon the face of the proceedings, or he or his deputy refuses to perform a service, if any person makes affidavit thereof, the clerk of the court from which it issues shall place the process in the hands of the coroner for execution, and may compel its return to his office for such purpose." The judgment in this case was rendered in October, 1876, against Myers. Execution was issued thereon. Subsequently to the issuing of the execution, Myers was elected sheriff of the county and was sheriff at the time the entry of the coroner purports to have been made, but it does not "appear upon the face of the proceedings" that Myers was disqualified from levying the execution. It was therefore necessary for the plaintiff, or some other person controlling the execution, to make an affidavit as to the sheriff's disqualification in the premises, in order to authorize the coroner to execute the process, the execution not being directed to him. Plaintiff in execution sought to establish a copy of the affidavit which he claimed to have made and filed with the clerk at the time the execution was placed in the hands of the coroner. This was resisted by the claimant. The judge heard the evidence of the witnesses for both parties, and refused to establish the copy, holding, we suppose, that the evidence did not affirmatively show that the affidavit had been filed when the execution was placed in the hands of the coroner. While the evidence was conflicting upon this question, it largely preponderated in favor of the claimant, and the court did not err in holding, under the evidence, that no such affidavit was filed. He consequently did not err in dismissing the levy upon the ground that the judgment was dormant at the time the last levy was made.

Upon an issue formed upon a motion to establish a copy of a lost office paper, the judge is the proper tribunal to hear the evidence and pass upon the same, though he may, if he see proper, submit the questions of fact to a jury. After he has heard the evidence and decided the question thereunder, it is too late for the losing party to tender an issue and ask that it be submitted to the jury.

*Judgment affirmed. All the Justices concurring.*